UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:16-CV-153-TBR-LLK

STATE FARM FIRE AND CASUALTY COMPANY and MICHAEL MAXWELL,     PLAINTIFF

v.

HAMILTON BEACH BRANDS, INC.,     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Hamilton Beach Brands, Inc.'s, ("Hamilton Beach"), Motion to Dismiss the Litigation as a Sanction for Plaintiff's Spoliation. [R. 24.] Plaintiff State Farm Fire and Casualty Company, ("State Farm"), responded, [R. 28], and Hamilton Beach replied, [R. 29]. Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Hamilton Beach's Motion to Dismiss the Litigation as a Sanction for Plaintiff's Spoliation, [R. 24], is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

On September 6, 2014, a fire started in the laundry room of Maxwell's home in Almo, Kentucky. [R. 1-1 at 5 (Complaint).] After learning of the fire, Maxwell contacted State Farm, his homeowner's insurance carrier. [R. 28-2 at 9 (Maxwell Depo.).] State Farm then contacted SERVPRO of Paducah about restoring the property. [*Id.* at 10.] Two days later, State Farm retained Origin & Cause Investigative Resources, LLC, ("Origin"), to conduct an origin and cause investigation of the fire at Maxwell's home. [R. 24-3 at 2 (Origin and Cause Summary Letter).] On September 9, 2014, State Farm hired EFI Global, Inc., ("EFI"), to perform an engineering evaluation of the house fire. [R. 24-4 at 2 (EFI Summary Report).]

1

James Jennings, a certified fire investigator, conducted an investigation at Maxwell's home on September 9, 2014. [R. 24-3 at 2.] In a letter to Merle Gambrill of State Farm, he explained that the fire originated in the laundry room. [*Id.*] He noted that two items that were plugged into the receptacle on the north wall of the laundry room, a clothing iron and a garment steamer, were collected by Matt Forbes of EFI for further examination. [*Id.*] He concluded that "[t]he classification of the fire based on current evidence is *Undetermined*. This classification may change, pending the results of the examination of evidence to be conducted by Matt Forbes PE." [*Id.*]

Matt Forbes performed an evaluation at Maxwell's home on September 12, 2014, and summarized his findings in a report dated November 17, 2014. [R. 24-4 at 2.] Forbes stated that the fire patterns in the laundry room indicated that the origin of the fire was placed around the outlet and items surmised by Jennings. [*Id.*] He noted that he collected the outlet, iron, garment steamer, and circuit breaker from Maxwell's home for laboratory analysis. [*Id.*] Ultimately, Forbes concluded that "[t]he fire patterns and electrical activity show an ignition internal to the [garment steamer]. The fire progressed from that point and spread up the wall of the laundry room to consume ordinary combustible material." [*Id.* at 4.]

On September 18, 2014, SERVPRO began restoring the property. [R. 24-2 at 29-30 (State Farm File Notes).] On June 30, 2015, State Farm sent a letter to Sunbeam Products, Inc., to inform them of "a loss caused by a faulty iron made by [their] company," and asking for reimbursement for the loss to the insured, Maxwell. [R. 28-8 at 1 (Letter to Sunbeam).] According to State Farm's claim notes, a representative from Walmart Stores, Inc.—the retailer of the garment steamer—informed State Farm on August 13, 2015 that the company Hamilton Beach manufactured the garment steamer at issue. [R. 28-9 at 1 (State Farm Aug. 13 Note).] The

next day, State Farm sent notice of the fire and damages to Hamilton Beach. [R. 28-10 at 1 (Letter to Hamilton Beach).] On August 24, 2014, Hamilton Beach requested to conduct a non-destructive examination of the evidence collected by State Farm. [R. 28-11 at 2 (Fax to State Farm).]The evidence was received by Hamilton Beach in time for a senior staff engineer, Michael Sandford, to inspect it and write a report dated October 27, 2017. [R. 24-9 at 2 (Sandford Report).] Sandford concluded that "the Maxwell garment steamer did not have a defect that would have caused ignition of the thermoplastic housing and/or surrounding combustibles." [*Id*. at 19.] He also lamented that the

> lack of recorded analysis or documentation as to the cause of the other 5 circuit breakers in a tripped OFF position, a lack of recorded analysis or documentation of the clothes washer or dryer, and a lack of preservation of any other evidence from the determined area of origin . . . makes identifying and/or ruling out other possible causes for his fire nearly impossible.

[*Id*.]

On September 29, 2016, this matter was removed to federal court by Hamilton Beach. [R. 1.] On December 24, 2017, Hamilton Beach filed this Motion to Dismiss Litigation as a Sanction for Plaintiff's Spoliation. [R. 24.]

## STANDARD

In deciding whether to assess sanctions for spoliation, the Court conducts a two-step inquiry. *In re Black Diamond Min. Co.*, 514 B.R. 230, 237 (E.D. Ky. 2014). First, the Court must determine whether sanctions are appropriate at all. *Id.* A spoliation sanction is warranted where the moving party establishes:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)); *see also Adkins v. Wolever*, 692 F.3d 499, 504 (6th Cir. 2012) (holding all three-factors must be satisfied before spoliation sanction is permitted). Second, upon finding that sanctions are warranted, the Court enjoys considerable discretion in fashioning a suitable remedy. *See Adkins v. Wolever*, 554 F.3d 650, 652–53 (6th Cir. 2009) (en banc); *Flagg v. City of Detroit*, 715 F.3d 165, 177–78 (6th Cir. 2013).

### DISCUSSION

Hamilton Beach moves to dismiss this litigation as a sanction for State Farm's spoliation of evidence. Specifically, Hamilton Beach asserts that State Farm destroyed the scene of the fire without preserving relevant evidence or contacting Hamilton Beach so it could send its own experts to investigate the scene. [R. 24 at 5-8.] State Farm responds that it fulfilled its duty to preserve relevant evidence by collecting and retaining what its experts determined caused the fire, as well as other artifacts discovered in that area of the house. [R. 28 at 4-5.]

Ultimately, this is an argument over what is to be considered *relevant* evidence in this case. According to State Farm's theory of the case, Maxwell's steamer, supplied by Hamilton Beach, caused the fire in the home. [R. 1-1 at 4, ¶ 16.] Hamilton Beach disagrees. [R. 24 at 8.] The parties' disagreement over what is relevant evidence surfaces in each of the three prongs to be established when considering a spoliation sanction.

#### A. Sanctions are Warranted

The first prong requires the moving party to show that "the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Beaven*, 622 F.3d at 553. Hamilton Beach argues that a sophisticated insurance company such as State Farm should have known of its duty to preserve evidence in case of future litigation, and, therefore, should have preserved the scene of the fire until Hamilton Beach's experts could inspect it. [R. 24 at 5-6.] In

its Reply, Hamilton Beach lists specific items, like the clothes dryer and other circuit breakers, that it argues State Farm should have preserved. [R. 29 at 6.] State Farm concedes that it had a duty to preserve evidence once it knew litigation was probable, but it states that it satisfied this duty by preserving the evidence located around the area where its experts determined the fire started. [R. 28 at 4.]

In considering a motion for sanctions involving an oven that was evidence of a fire, the Sixth Circuit stated:

> An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation . . . Whether [the nonmovant] *in fact* knew that the oven had legal relevance is beside the point. We apply an objective, not subjective standard. Because [the nonmovant] "*should have known* that the evidence may be relevant to future litigation, the first element of spoliation is met."

*Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) (quoting *Beaven,* 622 F.3d at 553–54 (citation omitted). Here, State Farm concedes that it realized its duty to preserve evidence relevant to litigation. [R. 28 at 4.] Although State Farm retained items the investigators it hired deemed to be relevant to the fire, it should have known that other items in the room, such as the dryer, could have been relevant to future litigation. At the very least, State Farm should have realized that forcing Hamilton Beach to rely on the evidence collected by State Farm's experts instead of what it could have collected on its own would result in unfair prejudice to Hamilton Beach. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 594 (4th Cir. 2001)[1] ("To require General Motors to rely on the evidence collected by Silvestri's experts in lieu of what it could have collected would

---

[1] The Court notes that the Sixth Circuit has favorably cited to *Silvestri*. *See, e.g.*, *Byrd*, 518 F. App'x at 386; *Beaven*, 622 F.3d at 555.

5

result in irreparable prejudice."); *Barton Brands, Ltd. v. O'Brien & Gere, Inc. of N. Am.*, No. 307-CV-78-H, 2009 WL 1767386, at *3 (W.D. Ky. June 22, 2009) (Heyburn, J.) ("However, the absolute responsibility of a party in these circumstances is to notify opposing counsel in a timely fashion of the intended destruction. Failure of such notice created the potential for unfair prejudice . . .."). Thus, Hamilton Beach has established the first prong.

The second prong to be considered requires the moving party to show that "the [evidence was] destroyed 'with a culpable state of mind.'" *Beaven*, 622 F.3d at 553. Hamilton Beach asserts that State Farm knowingly, or at least negligently, destroyed evidence by permitting SERVPRO to restore the property before Hamilton Beach could inspect the scene of the fire. [R. 24 at 7.] State Farm claims that it did not possess a culpable state of mind when it failed to preserve the scene of the fire because it preserved the objects discovered around what it determined to be the source of the fire. [R. 28 at 5-6.]

In relation to the second prong, the Sixth Circuit has stated that "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or *negligently*.'" *Beaven*, 622 F.3d at 554 (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)). Three years later, the Sixth Circuit stated that "[d]estroying evidence known to have some importance to the determination of a fire's cause satisfies the requisite culpability for evidence spoliation." *Byrd*, 518 F. App'x at 385. In *Beaven*, the Sixth Circuit affirmed the district court's finding that the nonmovants intentionally destroyed a folder containing documents that they knew were relevant to the case. *See id*.

In comparison, the Eastern District of Kentucky found that the nonmovant was negligent in *Arch Insurance v. Broan-Nutone, LLC* when it trusted a piece of evidence to a nonparty who had it destroyed in order to avoid incurring storage fees. *See Arch Ins. v. Broan-Nutone, LLC*, No. 09-319-JBC, 2011 WL 3880514, at *2 (E.D. Ky. Aug. 31, 2011), *aff'd* 509 F. App'x 453 (6th Cir. 2012). Like the case at hand, *Arch Insurance* also involved a subrogation action after a fire. However, in *Arch Insurance*, both sides were able to send investigators to the scene of the fire. *See Arch Ins.*, No. 09-319-JBC, 2011 WL 3880514, at *1. Here, the Court is at a severe disadvantage in determining whether the evidence destroyed was "known to have some importance to the determination of a fire's cause" because it only has one side's investigation of the scene before it. *Byrd*, 518 F. App'x at 385. The Court finds that State Farm was at least negligent in destroying the other objects in the laundry room when it should have known that it could be considered relevant evidence in the future, especially by Hamilton Beach.

The third, and final, prong instructs the movant to establish "that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven*, 622 F.3d at 553. Hamilton Beach argues that the evidence destroyed by State Farm when it allowed the restoration of the laundry room was relevant in that at least one of the other items in the room, now lost, might have proven a theory for an alternate cause of the fire. [R. 24 at 8.] In response, State Farm cites Maxwell's testimony that, "other than minor issues with a sump pump and fault board on the air conditioning unit," the home did not have any electrical issues, including the dryer, and the steamer was the only new appliance. [R. 28 at 6-7 (citing R. 28-2 at 22-24; 31).] Furthermore, State Farm points out that Hamilton

Beach's engineer was able to conclude that the steamer was not responsible for the fire based on the evidence State Farm preserved from the scene. [*Id*. at 7.]

As previously mentioned, the Eastern District of Kentucky encountered a similar situation in *Arch Insurance* when the nonmovant negligently trusted an important object in the case, a fan/light assembly, to a nonparty who had it destroyed. No. 09-319-JBC, 2011 WL 3880514, at *2. The district court stated that "under these circumstances, a reasonable plaintiff, foreseeing and intending litigation, would have taken an affirmative step to ensure that the evidence around which its theory of liability is centered would be preserved until trial." *Id*. at *3. In affirming the district court, the Sixth Circuit stated that the sanction of a permissive adverse-inference instruction was adequate because without access to the fan/light assembly, the movant was "unable to definitively refute Plaintiff's causation theory." *Arch Insurance*, 509 F. App'x at 458.

Here, State Farm's theory of liability is that the steamer supplied by Hamilton Beach was the ignition source of the fire. [R. 1-1 at 4, ¶ 16.] This means that the steamer itself is the most relevant piece of evidence in the case. But it does not mean that it is the only relevant piece of evidence.[2] The Court finds that a reasonable trier of fact could find that an examination of other appliances in the laundry room, such as the dryer, would support the defense as an alternate source of the fire. *See Arch Insurance*, 509 F. App'x at 458; *see also Barton Brands, Ltd.*, No. CIV. A. 307-CV-78-H, 2009 WL 1767386, at *3 (finding prejudice to the movants when they did not receive notice to examine the scene of the fire and, thus, could not form a determination of the cause). Hamilton Beach will be able to present its engineer's findings that the steamer was not the cause of the fire to a

---

[2] Furthermore, the Court notes that Hamilton Beach's engineer found that significant components of the steamer, such as the metal pump motor housing, were not provided to Hamilton Beach by State Farm. [R. 24-9 at 13.]

jury,³ but it will not be able to "definitively refute" State Farm's causation theory if it cannot present evidence supporting alternative causes. In sum, the Court finds that Hamilton Beach has established the three prongs required for a spoliation sanction.

**B. The Sanctions**

Under the Court's "inherent power to control the judicial process," it may impose sanctions for spoliated evidence that "serve both fairness and punitive functions." *Adkins*, 554 F.3d at 652. "Because failures to produce relevant evidence fall 'along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality,' the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id*. at 652–53. This creates a range of sanctions available to the district court, from dismissing a case to "instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id*.

In the matter at hand, where there is nothing in the record to support the notion that the other potential evidence was "purposely or knowingly destroyed by the plaintiffs, the extreme sanction of [dismissal] is inappropriate." *Arch Ins.*, No. 09-319-JBC, 2011 WL 3880514, at *2 (citing *Silvestri*, 271 F.3d at 590). Also, as previously explained through the findings of Hamilton Beach's engineer, dismissal is inappropriate because Hamilton Beach is not "unable to construct a defense because the evidence has been destroyed." *Id*. at *4. Furthermore, an irrebuttable adverse inference that further investigation of the scene would have undermined State Farm's theory of causation is not warranted here "because no evidence supports a conclusion that the plaintiff[] purposely or knowingly caused it to be destroyed to avoid further study." *Id*. (citing *Beaven,*, 622

---

³ The Court notes that Hamilton Beach has presented evidence through Sandford's report suggesting that, at the very least, the dryer "coupled with the multiple tripped double pole circuit breakers in the electrical panel" indicates it was a potential ignition source. [R. 24-9 at 19.]

9

F.3d at 554; *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir.1995) ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.") Thus, the Court finds that the proper sanction for State Farm's negligent destruction of evidence is a permissive adverse-inference instruction to the jury that will allow but not require it to infer that Hamilton Beach was denied a chance to investigate the scene of the fire after State Farm's experts finalized their ignition theory and that such an investigation could have either confirmed or denied that theory. This sanction will serve both fairness and punitive functions by providing a remedy for the prejudice to Hamilton Beach when it was forced to depend on the opposing side in this litigation for evidence that could support its case. *See Arch Ins.*, 509 F. App'x at 458-49 (citing *Residential Funding Corp.,* 306 F.3d at 108) ("[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference.") (internal quotation and citation omitted)).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

Hamilton Beach's Motion to Dismiss the Litigation as a Sanction for Plaintiff's Spoliation, [R. 24], is **GRANTED IN PART AND DENIED IN PART**. Hamilton Beach's Motion to Dismiss the Litigation as a Sanction is DENIED. However, the Court will issue a sanction in the form of a permissive adverse-inference instruction to the jury that will allow, but not require, it to infer that Hamilton Beach was denied a chance to investigate the scene of the

fire after State Farm's experts finalized their ignition theory and that such an investigation could have either confirmed or denied that theory.

**IT IS SO ORDERED.**

cc: Counsel of Record